FILED

97 NOV 14  PM 1:56

U.S. DISTRICT COURT
N.D. OF ALABAMA

JAMES ALLEN COBB,              )
                              )
        Plaintiff,             )
                              )
vs.                           )    Civil Action No. CV96-S-1143-NE
                              )
COYNE CYLINDER COMPANY, INC.,  )
                              )
        Defendant.            )

ENTERED

## MEMORANDUM OPINION

NOV 1 4 1997

James Allen Cobb alleges defendant refused him promotions and accommodations in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. Cobb suffered numerous on-the-job injuries during his tenure with defendant, but the action pivots upon the accident that occurred on September 15, 1994, which James Allen Cobb contends caused his disability. (Complaint ¶¶ 11, 16.) The action presently is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions,[1] the court concludes the motion is due to be granted.

### I.  BACKGROUND

Defendant, Coyne Cylinder Company, Inc., manufactures hollow metal canisters, or "cylinders," designed to transport or store compressed gases, chemicals, and other materials. (Michael Camp affidavit ¶ 2.) On September 15, 1994, plaintiff injured his neck

---

[1]On the same day it filed its motion for summary judgment, defendant also filed a motion to amend summary judgment, which merely seeks to supplement defendant's evidentiary submissions. This court's submission order of June 9, 1997 stated that defendant's evidence was to be filed by June 16, 1997. Therefore, the motion to amend was timely filed, and is due to be granted.

while repetitively rolling cylinders across the floor of defendant's plant. (Plaintiff's deposition exhibit 11 at 6.) Dr. Rhett Murray performed surgery on November 2, 1994. (*Id.* at 60.) He released plaintiff to return to work with no restrictions in February of the following year. (Hulgan affidavit ¶ 7; Cobb deposition exhibit 10.) Plaintiff continued to complain of neck pain, however, and a second surgery was performed by another physician, Dr. Zenko Hrynkiw, on April 27, 1995. (Hrynkiw deposition at 7-8.) Dr. Hrynkiw first released plaintiff to return to work two months after surgery (June 19, 1995), but imposed a twenty pound lifting restriction. Dr. Hrynkiw determined that Cobb reached maximum medical improvement on August 7, 1995, and permanently released him for work, but retained the same twenty pound lifting restriction. (*Id.* at 9-10.)

Upon his return to work following the second surgical procedure, defendant placed plaintiff in a "material handler"[2] position on its paint line, a position which was consistent with his restrictions. (Hulgan affidavit ¶ 7; plaintiff's deposition at 65.) Plaintiff prepared metal cylinders for painting. None of the objects he was required to lift weighed more than ten pounds. (Nix affidavit ¶ 4.)

During October of that same year, the supervisor of defendant's welding department (David Edwards) submitted his notice of resignation. (Camp affidavit ¶ 3.) Defendant was undergoing a

---

[2]"Material handler" is the term defendant uses to designate hourly production employees. (Nix affidavit ¶ 3.)

2

reorganization at the time, which eliminated the position of a supervisor in the finishing department, Anthony J. Beal. (*Id.*) Defendant's vice-president of manufacturing, Mike Camp, testified that: he desired to retain Anthony Beal as an employee, because of his supervisory experience and leadership qualities; he therefore transferred Beal to the welding supervisor's position; and, he did not consider anyone other than Beal for the position. (*Id.* ¶¶ 4,5.)

Plaintiff learned of the welding supervisor's resignation on October 20, 1995, however, and submitted an application for the position. (Plaintiff's deposition at 163-64, 172-73.) Defendant claims plaintiff was not qualified for the welding supervisor position, because he lacked supervisory experience and his medical restriction prevented him from performing the physical requirements of the job. Defendant also alleges vice-president Camp made the decision to transfer Beal before plaintiff informed human resources manager Ben Hulgan of his interest in the welding supervisor position (Hulgan affidavit ¶ 8), but plaintiff claims he applied for the position almost simultaneously with the former supervisor's notice of resignation. (Plaintiff's deposition at 312-13.) In any event, Beal was not officially placed in the welding supervisor position until October 30, 1995. (Hulgan deposition exhibit 20 at 6.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on November 3, 1995, alleging: "My employer, Coyne Cylinder Co., Inc. has repeatedly denied me

3

promotions to higher pay grades on account of my disability."
(Plaintiff's deposition exhibit 6.)  On February 28, 1996, the EEOC
issued plaintiff a notice of right to sue.  (Plaintiff's deposition
exhibit 7.)

Plaintiff sustained another on-the-job injury on April 23,
1996.  He was terminated the following day. (Plaintiff's deposition
at 41, 63.)[3]  Plaintiff commenced this action on May 1, 1996,
alleging discrimination on basis of disability in promotions and
accommodations.

## II.  CLAIMS BEFORE THIS COURT

Plaintiff claims he was denied numerous promotions between
1993 and 1996, because of his disabilities.  (See Opponent's
response to movant's claimed undisputed facts; Opponent's
undisputed facts.)  Any claims arising before May 7, 1995, however,
are not timely and barred.  The ADA incorporates the administrative
prerequisites of Title VII (42 U.S.C. § 12117 (a)), one of which is
that a charge of discrimination must be filed within 180 days of
the alleged unlawful employment practice.    42 U.S.C. § 2000e-
5(e)(1).    Thus, the only claims properly before this court are
those which occurred within the 180 day period leading up to

---

[3]Plaintiff elected to pursue a wrongful termination claim in state court
(see plaintiff's deposition at 45-49) under Alabama Code § 25-5-11.1, providing:
"No employee shall be terminated by an employer solely because the employee has
instituted or maintained any action against the employer to recover workers'
compensation benefits under this chapter ...."    Thus, the only claims before
this court are ADA claims for failure to promote and failure to accommodate.

In any event, defendant notes that all employees were terminated on April
26, 1996, following the purchase of the Coyne Cylinder manufacturing facility by
the Taylor-Wharton Division of Harsco Corporation.  (Hulgan affidavit ¶ 13.)

4

plaintiff's November 3, 1995 EEOC charge of discrimination: *i.e.*, those occurring on or after May 7, 1995.[4]

The parties present evidence of only two promotional opportunities after May 7, 1995: the October 30, 1995 welding supervisor position, and an April 4, 1996 stenciler position.[5] James Allen Cobb addresses only the former position in his brief; he offers no argument or evidence on the essential functions of the stenciler position. Therefore, the only claim this court need address is the welding supervisor position.[6]

---

[4]An argument based upon a theory of a "continuing violation" would not remedy the untimeliness of any claims arising before May 7, 1995, because plaintiff presents no evidence demonstrating defendant continuously maintained an illegal employment practice. Beavers v. American Cast Iron Pipe Company, 975 F.2d 792, 796 (11th Cir. 1992). Furthermore, plaintiff knew of his rights under the Americans with Disabilities Act on March 16, 1994 (prior to the September 15, 1994 date of his alleged disability), but nevertheless failed to file a charge of discrimination at any point before November 3, 1995. (See Hulgan deposition exhibit 11 (letter from plaintiff's attorney dated March 16, 1994, warning defendant about potential violations of the ADA).) When a plaintiff knows of his rights and fails to assert them, a continuing violation theory is inappropriate. *See* Roberts v. Gadsden Memorial Hospital, 850 F.2d 1549, 1550-51 (11th Cir. 1988).

[5]On April 4, 1996, plaintiff applied for a position as a stenciler and was the senior applicant. Even so, Ben Hulgan informed plaintiff he would not receive the position until it was determined that he could perform the essential functions of the job within the limits of the restrictions imposed by his physician. (Plaintiff's deposition 184-85, 190-91; Hulgan affidavit ¶ 13.) Defendant hired an occupational therapist to analyze the position, but the therapist's April 16, 1996 report did not address plaintiff's physical ability to perform the job. (Hulgan affidavit ¶ 13.) The position still had not been filled when the Coyne Cylinder manufacturing facility was sold to the Taylor Wharton Division of Harsco, Inc. and all employees terminated. (*Id.*; see also note 3 *supra*.)

[6]Plaintiff bears the burden of proving that he is a qualified individual: *i.e.*, he can perform the essential functions of the stenciler position, with or without reasonable accommodation. 42 U.S.C § 12111(8). By offering no evidence on the essential functions of the stenciler position, plaintiff failed to carry the burden of one of the essential elements of his claim. "The Supreme Court has declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the

5

### III. DISCUSSION

When, as here, a plaintiff's evidence of discrimination is circumstantial in nature,[7] the Supreme Court has developed a three stage framework for focusing the inquiry. *See McDonnell Douglas Corp. v. Green* , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[8] First, plaintiff must establish a *prima facie* case.

---

granting of summary judgment." Brooks v. Blue Cross and Blue Shield of Florida, 116 F.3d 1364, 1370 (11th Cir. 1997)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)).

[7]Plaintiff asserts there is direct evidence that defendant discriminated against him because of a disability, but offers no evidence of a correlation between any of defendant's actions or statements and his alleged disability. "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude <u>correlating</u> to the discrimination or retaliation complained of by the employee." Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir. 1990)(emphasis supplied).

Plaintiff does present one hearsay statement which arguably constitutes direct evidence of a discriminatory animus, if it is read out of context, and, assuming it could be reduced to admissible form for purposes of trial. *See, e.g.,* McMillian v. Johnson, 88 F.3d 1573, 1584-85 (11th Cir. 1996); *aff'd,* ___ U.S. ___ , 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)(inadmissable hearsay may be used at summary judgment if it could be reduced to admissible form at trial); Pritchard v. Southern Company Services, 92 F.3d 1130, 1135, *modified,* 102 F.3d 1118 (11th Cir. 1996)("hearsay may sometimes be considered by a court when ruling on a summary judgment motion"). In deposition, plaintiff testified he was told by another employee that defendant's vice president of manufacturing, Mike Camp, declared that plaintiff would never receive a supervisor's position because of his alleged disabilities. (Plaintiff's deposition at 106.) The alleged statement was made in <u>1993</u>, however (*id.* at 103-06), and plaintiff admits he did not meet the ADA's definition of disability until his <u>September 15, 1994</u> injury. (Complaint ¶ 16.) Therefore, there can be no correlation between the statement and plaintiffs alleged disability, and the court will not conduct a direct evidence analysis.

[8]It is widely agreed that the burden-shifting analysis expressed in *McDonnell Douglas* and its progeny, as applied in Title VII cases, is similarly followed in deciding cases brought under the ADA. *See* Moses v. American Nonwovens, Inc., 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied,* ___ U.S. ___ , 117

6

A *prima facie* case under the ADA requires proof that: (1) plaintiff has a disability; (2) that he is a "qualified individual with a disability" (*i.e.*, that he can perform the essential functions of the job position that he holds or seeks, with or without reasonable accommodation being made by the employer[9]); and (3) he was subjected to unlawful discrimination (*i.e.*, sustained an adverse employment action) because of his disability. *E.g.*, *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224, (11th Cir. 1997); *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910 (11th Cir. 1996)(citing *Pritchard v. Southern Company Services,* 92 F.3d 1130, 1132 (11th Cir. 1996) and *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir. 1996)). In addition, plaintiff must demonstrate that his employer had actual or constructive knowledge of his disability, or considered him to be disabled. *Morisky*, 80 F.3d at 448.

If plaintiff establishes a *prima facie* case, then at the second stage of analysis the burden of production shifts to

S.Ct. 964 (1997)(implicitly using burden-shifting framework); McNemar v. The Disney Store, Inc., 91 F.3d 610, 619 (3d Cir. 1996), *cert. denied,* __ U.S. __, 117 S.Ct. 958 (1997); Rizzo v. Children's World Learning Centers, Inc., 84 F.3d 758, 761 n.2 (5th Cir. 1996), *cert. denied,* __ U.S. __, 117 S.Ct. 958 (1997); *see also* Johnson v. Boardman Petroleum, Inc. 923 F. Supp. 1563 (S.D. Ga. 1996); Lewis v. Zilog, Inc., 908 F. Supp. 931 (N.D. Ga. 1995).

[9]42 U.S.C. § 12111(8) (defining the term "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). *See also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position").

7

defendant to rebut the presumption of intentional discrimination by articulating legitimate, nondiscriminatory reasons for the employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendant's stated reasons merely are pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

## A.    Was Plaintiff a "Qualified Individual with a Disability"?

Defendant argues that plaintiff was not a "qualified individual with a disability," because he could not perform one of the essential functions of the welding supervisor job: he could not perform the jobs of the workers he supervised.

On March 5, 1995, defendant prepared a document describing the essential duties of all production supervisors, including the welding supervisor. (Hulgan deposition exhibit 21 at 7.) In part, that description provided:

**ESSENTIAL DUTIES AND RESPONSIBILITIES** include the following. Other duties may be assigned

. . .

Performs activities of workers supervised as required.

. . .

**PHYSICAL DEMANDS:** The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

. . .

8

> The employee must frequently lift and/or move up to 50 pounds.

(*Id.* at 8-9.)   Defendant relies upon that description as evidence of the essential functions of the welding supervisor position, and contends plaintiff could not perform the "activities of workers supervised": *e.g.*, "frequently lift and/or move up to 50 pounds."

> [C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8); *see also Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1996).

Plaintiff disputes defendant's contention with the following assertion: "According to Benford Hulgan, human resources manager at Coyne Cylinder, physically demanding work is not a necessary requirement of supervisory work." (Opponent's response to movant's claimed undisputed facts ¶ 51.)   Hulgan's testimony does not support that assertion, however.

> Q.   And is that [the welding supervisor's] job physically easier to perform than the [paint line] job that Mr. Cobb had at that time?
>
> A.   I would have to say no. Our supervisors are often working supervisors. It is not uncommon at all to see Mr. Beal doing various hourly jobs in the department on occasion when he has people absent or to fill-in if we are under heavy production, you know, to do a job while employees are on breaks or during lunch. <u>It can be quite physically demanding although we don't necessarily require that of supervisors</u>.

(Hulgan deposition at 67 (emphasis supplied).)   Plaintiff relies upon the emphasized portion of Hulgan's testimony as the basis for

9

his assertion that "physically demanding work is not a necessary
requirement of supervisory work." A fair reading of Hulgan's
complete statement, however, demonstrates that the ability to
perform the tasks of workers supervised is an essential function of
a supervisor's position. That interpretation is reinforced by
Hulgan's affidavit, providing that:

> as an essential function of a supervisor's job, the
> supervisor had to perform the job duties of the workers
> he or she supervised, as required. If an employee was
> absent or working on another task, the welding supervisor
> would be expected to step in and do that employee's job
> in order to meet production goals. If Cobb was not
> physically capable of performing any production jobs that
> required lifting more than 20 pounds or the use of
> vibratory tools,[10] he could not do most of the jobs in
> the Welding Department; therefore, Cobb could not have
> done an essential element of the welding supervisor's
> job.

(Hulgan affidavit ¶ 13.) Defendant also presents the affidavit
testimony of its vice president of manufacturing, Michael Camp, to
establish that the ability to perform the work of those supervised
was an essential function of the supervisory position sought by
plaintiff.

> [T]he Welding Department required a working supervisor.
> Periodically, the supervisor had to step in and do
> various production jobs throughout the department. This
> was an essential requirement of the position, as
> reflected in Coyne's job description for supervisors.
> The welding supervisor had to be able to perform the
> tasks of production employees when the need arose to meet
> production goals. Many of the production jobs in the
> Welding Department involved lifting items that weighed
> more than 50 pounds or using vibratory hand tools. Even
> if Cobb had been considered for the job, which he was

---

[10]In addition to the twenty pound lifting restriction imposed by Dr.
Hrynkiw, plaintiff claims he was subject to a restriction from an earlier injury
prohibiting the use of vibrating tools.

10

>   not, Cobb's medical restrictions — no lifting more than
>   20 pounds and no use of vibratory tools — would have
>   rendered him unqualified.

(Camp affidavit ¶ 7.)

Thus, defendant presents evidence of its judgment that the ability to perform the work of those supervised is an essential function of a supervisory position, and, evidence of a preexisting written job description listing that function as essential. 42 U.S.C. § 12111(8). Plaintiff presents nothing in rebuttal. The court therefore finds that the ability to perform the work of those supervised was an essential function of the welding supervisor position.

Further, plaintiff admits that "[a] number of the production jobs in the Welding Department required heavy lifting or the use of impact hand tools." (Opponent's response to movant's claimed undisputed facts ¶ 52.) Plaintiff also admits he could not perform any jobs in October of 1995 which required lifting more than twenty pounds. (*Id.* at 53.) Yet, many of the jobs plaintiff would have been required to perform as welding supervisor involved lifting more than fifty pounds. (Camp affidavit ¶ 7.) This court therefore finds that: plaintiff could not perform the essential functions of the welding supervisor position; he was not "a qualified individual with a disability"; and, defendant accordingly is entitled to summary judgment.

11

**B.   Was Plaintiff Subjected to Unlawful Discrimination Because of a Disability?**

Even if this court were to assume that plaintiff was a qualified individual with a disability, he still fails to demonstrate he was "subjected to unlawful discrimination because of his disability". *Duckett*, 120 F.3d at 1224. Rather, he did not receive the promotion because he was not as qualified as A.J. Beal: the finishing department supervisor who was laterally transferred into the welding department supervisory position. Defendant presented evidence that Beal's prior supervisory experience and proven leadership abilities were determinative factors in awarding the position. (Camp affidavit ¶ 4; Hulgan affidavit ¶ 9.) Beal possessed five years of experience in a supervisory position equivalent to welding supervisor. (Camp deposition at 7; Camp affidavit ¶ 4; Hulgan affidavit ¶ 9.) Plaintiff, however, never worked as a supervisor for defendant. (Hulgan affidavit ¶ 10.)

Plaintiff's counsel argues that "Cobb has had years of supervisory experience at Coyne cylinder," but presents no evidence to support that proposition. (Plaintiff's brief at 18.) Perhaps counsel's assertion is based upon plaintiff's two years of experience as a temporary "leadman" in defendant's spinning department. (Plaintiff's deposition at 64, 71.) If so, then it should be noted that plaintiff admitted leadmen are subordinate to "supervisors." (*Id.* at 209.) Furthermore, plaintiff admitted that his alleged leadman responsibilities were taken away in January of 1993, two and a half years before the welding supervisor position

12

became available. (*Id.* at 208-09.)  Thus, the evidence considered in a light most favorable to plaintiff still demonstrates that A.J. Beal was both more experienced and more recently experienced in a position of greater responsibility than plaintiff.  Accordingly, the court concludes that plaintiff was not equally qualified with Beal for the welding supervisor position; he was not "subjected to unlawful discrimination because of his disability"; and, summary judgment is appropriate.

## C.   Failure to Accommodate

Plaintiff's complaint claims defendant failed to accommodate his disability, but does not specify the accommodation which allegedly was denied.  Nevertheless, plaintiff's brief discusses reasonable accommodations immediately prior to arguing that plaintiff was entitled to the welding supervisor position. (Plaintiff's brief at 16-17.)   The court thus concludes that plaintiff sought an accommodation in the form of a transfer to the welding supervisor position.  However, "an employer is not required to promote an individual with a disability as an accommodation." 29  C.F.R.  §  1630.2(o)  App.; *White v. York International Corporation*, 45 F.3d 357, 362 (10th Cir. 1995); *Terrell v. USAir*, 955 F. Supp. 1448, 1454 (M.D. Fla. 1996).  Therefore, defendant's motion for summary judgment is due to be granted on plaintiff's claim for failure to accommodate.

### V.   CONCLUSION

For the foregoing reasons, the court concludes that defendant's motion for summary judgment is due to be granted on all

13

claims.   An order consistent with this memorandum opinion will issue contemporaneously herewith.

DONE this the 14th day of November, 1997.

_____
United States District Judge

**14**